IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| LARRY WAYNE ADAMS | § | |
| v. | § | CIVIL ACTION NO. 6:14cv280 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Petitioner Larry Adams, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Adams was charged with manslaughter and intoxication manslaughter. At trial, the jury acquitted him of intoxication manslaughter but convicted him of manslaughter with a deadly weapon finding. The trial court sentenced Adams to 20 years in prison.

The facts of the case showed that Adams, driving west on Court Road in Anderson County, struck a motorcycle ridden by Keith Gardner. The evidence showed that Adams was traveling between 64 and 69 miles per hour, in a 50 mile per hour zone. He was passing another car and was still in the eastbound oncoming lane when he struck the motorcycle.

Approximately one hour and 25 minutes after the accident, authorities drew a sample of Adams' blood. The Department of Public safety forensic chemist detected alcohol and hydrocodone in Adams' blood, but the alcohol concentration was below the legal limit and the amount of hydrocodone was below the therapeutic threshold.

On appeal, the Sixth Judicial District Court of Appeals determined that a rational juror could have concluded that: Adams' actions and condition collectively created a substantial and unjustifiable risk of the type of harm that occurred; disregarding the risks constituted a gross deviation from the standard of care that a reasonable person would have exercised; Adams was consciously aware of the substantial and unjustifiable risk at the time of the exercise of that conduct; and Adams consciously disregarded the existing risks. The Court of Appeals thus held that "a rational juror could have concluded, beyond a reasonable doubt, that Adams' conduct was reckless and that the reckless conduct caused Gardner's death." *Adams v. State*, slip op. no. 06-13-00016-CR, 2013 WL 4858774 (Tex.App.-Texarkana, September 11, 2013, *rehearing overruled* October 1, 2013), *pet. ref'd* December 18, 2013.

After unsuccessfully seeking discretionary review, Adams filed three state habeas applications. The first of these was denied without written order on March 14, 2014, the second challenged an order concerning restitution, costs, fines, and fees and was dismissed without written order on November 26, 2014, and the third was dismissed as successive on April 29, 2015.

## II. Adams' Claims

In his original federal habeas corpus petition, Adams asserted that (1) he received ineffective assistance of counsel at trial; (2) he is actually innocent; (3) the State concealed mitigating and exculpatory evidence; (4) the jury's verdict is against the great weight and preponderance of the evidence; and (5) he received ineffective assistance of counsel on appeal. He then filed an amended petition which deleted the ineffective assistance of counsel on appeal claim and added a claim that he was subjected to a warrantless blood draw in violation of *Missouri v. McNeely*, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013).

## III. The Report of the Magistrate Judge

### A. Ineffective Assistance of Counsel at Trial

Adams complained that his attorney, Stephen Evans, failed to present evidence to the jury from NMS Labs showing that Gardner was seriously impaired and had illegal substances including

benzodiazepines and cannabinoids in his system, as well as alcohol. Adams argued that this information would have placed a reasonable doubt before the jury to show that Gardner caused his own death.

The Magistrate Judge determined that this claim was procedurally defaulted because Adams did not exhaust his state remedies. The facts concerning NMS Labs were presented for the first time in his federal habeas petition and were not presented to the state courts.

To the extent Adams argued the procedural default was overcome because the lab findings showed he was actually innocent, the Magistrate Judge stated that the lab report did not find that Gardner actually had any of these substances in his blood. Instead, the report showed Gardner's blood contained caffeine, cotinine, nicotine, and an anti-depressant called citalopram, none of which are illegal. The report indicated that tests were run for benzodiazepines, cannabinoids, cocaine and its metabolites, and opiates, but nowhere indicated that any of those substances were actually detected even though the reporting limits for each of these substances was listed. Thus, the Magistrate Judge determined that Gardner did not raise a claim of actual innocence sufficient to overcome the procedural default.

B. Actual Innocence

Although Adams also argued actual innocence as a ground for relief, the Magistrate Judge concluded that a free-standing claim of actual innocence is not a ground for federal habeas corpus relief absent an independent constitutional violation in the underlying state criminal proceeding. *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). This objection is without merit.

C. Withholding of Exculpatory Information

Adams complained that exculpatory information in the form of Gardner's toxicology report was suppressed, again arguing that this report showed Gardner had illegal substances in his system and was impaired by alcohol. Suppression by the State of evidence favorable to the accused, where the accused has requested this evidence, violates due process where the evidence is material either

3

to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, where the evidence is not exculpatory, no Brady violation occurs from non-disclosure. *Spence v. Johnson*, 80 F.3d 989, 1006 (5th Cir. 1996). The Magistrate Judge determined that Adams failed to show Gardner's toxicology report was exculpatory, rendering his *Brady* claim without merit.

D. Sufficiency of the Evidence

Adams argued that the evidence was insufficient to show that he was aware of but consciously disregarded a substantial or unjustifiable risk and that had the jury heard about Gardner's toxicology report, there should be no possibility that a rational trier of fact would convict him. However, the jury had evidence showing that Adams was driving well in excess of the speed limit, when night was falling, and that he had some alcohol and a small amount of hydrocodone in his system. A Department of Public Safety trooper testified that based on his training and experience, Adams' actions could be considered reckless and a normal and prudent person would "probably say this was not justifiable to do what he did." Adams offered nothing to suggest that the result of the proceeding would have been altered had the jury heard of Gardner's toxicology report. Thus, the Magistrate Judge stated that the evidence was sufficient to permit a rational trier of fact to convict him.

E. The Legality of the Blood Draw

Adams cited *Missouri v. McNeely*, 569 U.S. 141, 133 S.Ct. 1552, 1560-62, 185 L.Ed.2d 696 (2013) in contending that the taking of a blood sample from him without a warrant violated the Fourth Amendment. The police officer who first investigated the accident, Officer Lara, testified that Adams consented to the blood draw, but Adams claimed he was threatened with suspension of his license and told "the blood would be taken anyway" if he did not consent. The Magistrate Judge concluded that this unsubstantiated assertion lacked probative evidentiary value and Adams' consent vitiated any requirement for obtaining a warrant.

Even assuming Adams did not consent to the blood draw, the Magistrate Judge determined that Adams' Fourth Amendment claim lacked merit. Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. *Stone v. Powell*, 428 U.S. 465, 494-95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The Magistrate Judge noted in this regard that it is the existence of the state processes allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the rule and bars federal habeas corpus consideration of those claims. *Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2000).

The Magistrate Judge additionally stated that Adams' claim under *McNeely* was procedurally defaulted because he did not raise it until his third state habeas petition, which was dismissed as successive by the Texas Court of Criminal Appeals. The Magistrate Judge concluded that Adams failed to meet his burden of proving that there was no reasonable basis for the state courts to deny relief, and that Adams was therefore not entitled to federal habeas corpus relief.

## IV. Adams' Objections

In his objections, Adams states first that the case against him relied heavily on the toxicology report showing he had alcohol and hydrocodone in his system, and without this evidence, the jury would be left with "judgment errors." This appears to be a challenge to the Magistrate Judge's conclusion concerning the sufficiency of the evidence.

However, the Court of Appeals found, and a review of the record confirms, that Adams was traveling at a speed well in excess of the posted limit, at a time when night was falling, close to an intersection, and did not attempt to put on his brakes or otherwise try to avoid the collision. When viewed in the light most favorable to the verdict, the evidence taken as a whole would permit a rational trier of fact to find the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979). Adams' objection with regard to the sufficiency of the evidence is without merit.

Second, Adams asserts that his *McNeely* claim was not procedurally defaulted because he raised it as a new legal claim in his third state habeas application but the Court of Criminal Appeals refused to respond to it. Even assuming Adams could somehow show that the Court of Criminal Appeals erred, the Fifth Circuit has held that errors in state habeas proceedings do not give rise to grounds for federal habeas corpus relief. *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir.1999); *Byrne v. Butler,* 845 F.2d 501, 509–110 n. 8 (5th Cir.), *cert. denied* 487 U.S. 1242, 108 S.Ct. 2918, 101 L.Ed.2d 949 (1988). This objection is without merit.

Similarly, Adams asserts that for the doctrine of *Stone v. Powell* to apply, a full and fair hearing with respect to the claim must be given. He cites *Bridgers v. Dretke*, 431 F.3d 853, 861 (5th Cir. 2005), stating "in *Bridgers*, the Fifth Circuit defines what a 'fair hearing' means, that the state courts must correctly apply federal constitutional law. Because the state court, nor the Court of Criminal Appeals, applied any federal constitutional law, the *Stone* doctrine does not apply."

Adams mis-states the holding in *Bridgers*. The petitioner in that case argued that he was denied a full and fair opportunity to litigate because the trial court wrongly concluded that he was not seized in violation of the Fourth Amendment. The Fifth Circuit stated "we have rejected such an argument, explaining that 'if the term 'fair hearing' means that the state courts must correctly apply federal constitutional law, *Stone* becomes a nullity." *Bridgers*, 431 F.3d at 861, *citing Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978). The state courts need only offer a full and fair opportunity to litigate the Fourth Amendment claim; even if the state court improperly applied its own procedural law in refusing to consider such a claim, the Fifth Circuit has explained that errors in adjudicating Fourth Amendment claims are not an exception to the *Stone* bar. *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). Adams' objection that *Stone* does not apply is without merit.

Adams next contends that he never consented to a blood draw and therefore "any blood evidence is illegal and petitioner's toxicology report is used against him unconstitutionally violating the Fourth Amendment." Based on his claim that the blood draw was obtained unlawfully, Adams maintains that the court should find absent the blood draw evidence, no jury could convict him.

As set out above, the jury had ample evidence to convict Adams of manslaughter even without the toxicology report. His Fourth Amendment claim is barred by *Stone v. Powell*. This objection is without merit.

Adams complains that the Magistrate Judge's Report does not mention the fact that one Department of Public Safety trooper, Jason Rolison, testified that the stretch of road where Adams legally overtook another vehicle should not have been marked as a passing zone. He states that "the effort petitioner used to pass the vehicle is legal (RR at 193), so where is the crime? Only in the blood evidence."

As the Sixth Court of Appeals explained, "[t]he collision occurred on a stretch of the road marked for passing. Trooper Jason Rolison, a state trooper with the Texas Department of Public Safety (DPS), testified the stretch should not have been marked for passing because Section 545.056 of the Texas Transportation Code prohibits passing within one hundred feet of an intersection. *See* Tex. Transp. Code Ann. § 545.056 (West 2011)." *Adams v. State*, 2013 WL 4858774 at *2. It was not disputed at trial that the stretch of road was incorrectly marked as a passing lane.

Although Adams stated that "the effort petitioner used to pass the vehicle is legal," the evidence at trial showed that he was driving well in excess of the speed limit. When asked if this was a legal pass, Trooper Rolison replied "that [Adams' speed] would make it illegal." (Docket no. 10-8, p. 33). In addition, Trooper Rolison stated that the pass was illegal, regardless of how the road was marked, because §545.056 of the Texas Transportation Code prohibits driving on the left side of the road within 100 feet of an intersection or railroad grade cross in a municipality. Trooper Rolison testified that based on his training and experience and his opinion as an expert, Adams' actions appeared to be reckless. (Docket no. 10-8, p. 35).

There was ample evidence to support a finding of recklessness even given the fact that as the jury was aware, the road was incorrectly marked. Under Texas law, the State was not required to prove that Adams' actions would be reckless under all circumstances or that Adams' actions violated traffic laws, although it appeared that he was speeding at the time of the accident. Instead, the State was only required to prove that there were actions taken by Adams which, under the circumstances that existed that night, created a substantial and unjustifiable risk. *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex.App.-Austin 1997, pet. ref'd); *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Crim.App. 1975).

The evidence showed that at the time of the collision, night was falling and visibility was reduced, Adams was traveling at a high rate of speed, and Adams did not apply his brakes or make any other effort to avoid the collision. These facts demonstrate that a substantial and unjustifiable risk existed and that the disregarding of this risk amounted to a gross deviation from the standard of care which a reasonable person would have exercised in the same situation.

Contrary to Adams' contention, the evidence further showed that the effort used to pass the other car on the road was not legal, nor were his actions prudent. Although Adams argues that "naturally, any prudent person will exceed the speed limit while passing," the Texas Transportation Code does not provide for an exception to the speed limits for purposes of passing. Instead, Tex. Transp. Code art. 545.352(a) provides that a speed in excess of the limits established by subsection (b) or under another provision of the subchapter is *prima facie* evidence that the speed is not reasonable and prudent and that the speed is unlawful. Article 545.351(a) states that an operator may not drive at a speed greater than that which is reasonable and prudent under the circumstances, and art. 545.351(c) provides that an operator shall, consistent with subsections (a) and (b), drive at an appropriate reduced speed if the operator is approaching and crossing an intersection or railroad grade crossing, approaching a hill crest, or a special hazard exists with regard to traffic, including pedestrians, weather, or highway conditions. Adams fails to show that his speed of 64 to 69 miles

an hour in a 50 per mile an hour zone was reasonable or prudent. His objection on this point is without merit.

Adams similarly objects that the only way Trooper Rolison could testify that Adams' actions were not reasonable or prudent is through the blood draw evidence, or knowledge of it. He again asserts that "nowhere in Texas law does it state that a person may not exceed the speed limit while legally passing another vehicle," but fails to point to any exception for passing in the Texas Transportation Code. Trooper Rolison testified to other aspects of Adams' recklessness besides the blood draw evidence, including his speed and the fact that there was no attempt to brake or avoid the collision. Adams' objection on this point is without merit.

Adams attaches two exhibits to his objections. The first of these is a motion for reconsideration dated June 16, 2017, which Adams submitted to the Sixth Judicial District Court of Appeals. The exhibit also includes a letter to him from the Clerk of that Court, stating that the mandate in the case issued on January 15, 2014, and the Sixth Court of Appeals no longer has jurisdiction over the case; thus, his documents were returned to him without action. The fact that Adams sought to file a motion in the Sixth Court of Appeals some three and a half years after the mandate issued, at a time when that court no longer had jurisdiction, does not present any valid grounds for relief. This objection is without merit.

The second exhibit is a document labeled "consent.pdf," which is a blank form entitled "Police Officer's Sworn Report." He states that this form shows that if consent is given for a blood draw, such consent must be in writing. However, Texas courts have upheld oral consents to blood draws. *See, e.g., Spillers v. State*, slip op. no. 01-15-00935-CR, 2017 WL 1738095 (Tex.App.-Houston [1st Dist.], May 4, 2017, pet. ref'd); *Collins v. State*, slip op. no. 06-13-00214-CR, 2014 WL 2447599 (Tex.App.-Texarkana, May 30, 2014), pet. ref'd). In any event, even assuming that Adams did not validly consent, his challenge to the propriety of the blood draw is a Fourth Amendment challenge and thus precluded by *Stone*. His objections are without merit.

## V. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Petitioner's objections are overruled and the Report of the Magistrate Judge (docket no. 43) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled application for the writ of habeas corpus is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that the Petitioner Larry Adams is **DENIED** a certificate of appealability *sua sponte*. Finally, it is

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED**.

**So Ordered and Signed**
**Sep 25, 2017**

_____
Ron Clark, United States District Judge